IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

May 19, 2010

RE: JEAN-CLAUDE P. HILL V. DAVID DIGUGLIELMO, ETAL
CA No. 09-1804

## NOTICE

Enclosed herewith please find a copy of the Report and Recommendation filed by United States Magistrate Judge Angell, on this date in the above captioned matter. You are hereby notified that within fourteen (14) days from the date of service of this Notice of the filing of the Report and Recommendation of the United States Magistrate Judge, any party may file (in duplicate) with the clerk and serve upon all other parties written objections thereto (See Local Civil Rule 72.1 IV (b)). **Failure of a party to file timely objections to the Report & Recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court Judge.**

In accordance with 28 U.S.C. §636(b)(1)(B), the judge to whom the case is assigned will make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The judge may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge, receive further evidence or recommit the matter to the magistrate judge with instructions.

Where the magistrate judge has been appointed as special master under F.R.Civ.P 53, the procedure under that rule shall be followed.

MICHAEL E. KUNZ
Clerk of Court

By:
LINDA V. JERRY, Deputy Clerk

cc: Hill
Goldsborough

Courtroom Deputy to Judge Dalzell

civ623.frm
(11/07)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEAN-CLAUDE P. HILL [CF-7187] | : CIVIL ACTION |
| v. | : |
| DAVID DiGUGLIELMO, et al. | : NO. 09-1804 |

FILED
MAY 18 2010
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## REPORT AND RECOMMENDATION

M. FAITH ANGELL                                        May 17, 2010
UNITED STATES MAGISTRATE JUDGE

Presently before this Court is a *pro se* Petition for Writ of Habeas Corpus filed, pursuant to 28 U.S.C. §2254, by a state prisoner. Petitioner, Jean-Claude P. Hill, is currently incarcerated at the State Correctional Institution (SCI) in Graterford, Pennsylvania, where he is serving an aggregate sentence of life plus thirty (30) to sixty (60) years after being found guilty but mentally ill of one (1) count of murder in the first degree, three (3) counts of aggravated assault, and possessing an instrument of crime. For the reasons which follow, it is recommended that Dr. Hill's habeas claims be denied and dismissed as time-barred.

## I. BACKGROUND[1]

The background of this case was set forth by the Court of Common Pleas of Philadelphia County as follows:

> 8 April 1991 was a beautiful Spring day and hundreds of
> people were outside crowding the Benjamin Franklin Parkway in the

---

[1] In preparing this Report and Recommendation, I have reviewed the following documents: Dr. Hill's habeas petition, with exhibit; the Commonwealth's Response, inclusive of all exhibits thereto; various correspondence from Petitioner, and the state court record.

City of Philadelphia, enjoying the weather. That day, Peter Foy, Robert Dowe, John Senatore, and Leonard Allen were celebrating Peter Foy's 49th birthday and having lunch at a popular Center City restaurant. The four men, all executives of the CIGNA Corporation, were walking back along the Parkway to their workplace for a 1:00 P.M. meeting. At that moment, Peter Foy, father of two, and his three companions' lives were changed forever, along with the lives of their families. Numerous eyewitnesses who testified at trial observed the [petitioner] pull up in a blue Chevrolet Cavalier, walk up behind the four men with a .45 caliber handgun, and open fire. A bullet struck Peter Foy in the back of the head. Robert Dowe was then struck in the head and chest, and John Senatore was struck in the chest. Leonard Allen was able to take cover and dived into some bushes as he felt a bullet graze his hair. (N.T. 4/22/92, p. 951).

The [petitioner] then calmly got back into his car, adjusted his side rear view mirror, quickly pulled into traffic and ran a red light. (N.T. 4/20/92, p. 722) Several eyewitnesses observed the [petitioner's] license plate number as THT-635, registered in Virginia.

The four victims were then given emergency aid and rushed to area hospitals. Peter Foy was taken to Hahnemann Hospital and was pronounced dead in the early morning hours of 9 April 1992. Dr. James Lewis testified at trial that Peter Foy died from a bullet wound to the head which macerated his brain and fractured his skull. (N.T. 4/22/92, p. 1051). Robert Dowe was taken to Jefferson Hospital where he was treated and released after six days for a bullet wound to his left temple. The bullet tracked out of his head near his ear and re-entered his body in his right shoulder and then exited out his upper arm. (N.T. 4/22/92, pp. 1065-1066). John Senatore was treated and released after several days for a bullet wound to the arm and chest. The bullet entered his upper arm, tracked through his chest, puncturing his lung, and lodged under his skin in the mid-chest area. Hospital personnel removed the bullet and gave it to the Philadelphia Homicide Division. (N.T. 4/21/92, p. 791). Leonard Allen had no injuries.

After the chaos of the shooting had subsided, the manhunt for the shooter began. The Philadelphia Homicide Division received a call from Mildred Dickerson, the [petitioner's] cousin. She had viewed many news flashes and special reports on the television throughout the day and eventually came to the terrifying conclusion

that her cousin had committed those horrible acts. The [petitioner] had been staying with her and her husband while looking for an apartment in Philadelphia because he was to start a psychiatric residency at Hahnemann Hospital in the City. Mrs. Dickerson informed the Police that the [petitioner] had left abruptly and was headed to his parent's home in Elberon, Virginia. Philadelphia Homicide traced the license plate number of the shooter's car to a Governor Hill in Elberon, Virginia, the [petitioner's] father. (N.T. 4/21/92, pp. 842-843). Surry County, Virginia authorities located the car with the corresponding license plate at Governor Hill's residence. After a positive photo identification of the [petitioner] by Police Officer Mark Perry, an eyewitness to the shooting, Detective Theodore Cannon procured an arrest warrant and faxed it to Surry County. (N.T. 4/21/92, pp. 845-847).

Detective Cannon, accompanied by Lieutenant Coluzzi and Detective Philomenia Flaherty of the Philadelphia Homicide Division and a CIGNA representative, were immediately dispatched to Surry County, Virginia, where Elberon, Virginia is located. Upon their arrival, they were informed by Surry County authorities that the [petitioner] had already been taken into custody when he left his residence to go jogging. Detective Cannon, after giving the [petitioner] proper constitutional warnings, interviewed him concerning his role in the shooting. The [petitioner] stated that he was driving down the Benjamin Franklin Parkway in Philadelphia, after renting an apartment to live in while serving a residency at Hahnemann Hospital, when he heard several shots. He stated that someone tried to get in this car but he was able to drive away. The [petitioner] also admitted owning a .45 caliber handgun which was in his car during the shooting and which was presently in the car. (N.T. 4/21/92, pp. 863-865). Detective Cannon then obtained a search warrant and seized a .45 caliber Colt handgun from the [petitioner's] automobile. (N.T. 4/21/92, p. 873).

Police Officer John Finor, qualified as an expert in ballistics, testified at trial that several spent shell casings which were discovered on the sidewalk at the scene of the shooting, and the bullet which was removed from the chest of John Senatore, were both fired from the handgun discovered in the [petitioner'] car. (N.T. 4/22/92, p. 1030).

*Commonwealth v. Hill*, April Term, 1991, Nos. 3889-3998, slip op. at 2-5 (C.C.P. Philadelphia County, January 21, 1993).

3

Following a jury trial before the Honorable Joseph D. O'Keefe, Petitioner was found guilty but mentally ill of murder in the first degree, three (3) counts of aggravated assault, and possession of an instrument of crime, generally. The Court imposed the mandatory sentence of life imprisonment for the charge of murder in the first degree and deferred sentencing on the remaining charges pending post-trial motions and the receipt of a pre-sentence report and mental health evaluation. *Id.* at 1. On December 1, 1992, post-trial motions were argued and denied, and Dr. Hill was sentenced as follows: "on bill number 3894, the first count of Aggravated Assault against Mr. John Senatore, ten (10) to twenty (20) years in a State Correctional Institution, to be served consecutively to the life sentence. On bill number 3895, the second count of Aggravated Assault against Mr. Robert Dowe, ten (10) to twenty (20) years in a State Correctional Institution, to be served consecutively to the first count of Aggravated Assault. On bill number 3897, the third count of Aggravated Assault against Mr. Leonard Allen, ten (10) to twenty (20) years in a State Correctional Institution, to be served consecutively to the second count of Aggravated Assault. On the charge of Possession of an Instrument of Crime, Generally, two and one-half (2 ½) to five (5) years in a State Correctional Institution, to be served concurrently to the life sentence. *Id.* at 2.

Dr. Hill filed a timely direct appeal in which he raised the following issues:

> [Petitioner] challenges the sufficiency of the evidence to sustain his conviction for first-degree murder on the basis that the verdict of guilty but mentally ill negated a specific intent to kill. [Petitioner] also challenges the death qualification of the jury in that (a) mitigating factors outnumbered aggravating factors, thus precluding imposition of the death penalty and (b) that the jury was conviction prone. [Petitioner] also alleges prosecutorial misconduct, claims that the trial court erred in not declaring a mistrial when it learned that the jury had discussed a newspaper article in the jury room and challenges his competency to stand trial because of a severe hypothyroid condition.

4

*Commonwealth v. Hill*, No. 04178 Philadelphia, 1992, slip op. at 2 (Superior Court, May 20, 1993). Judgment of sentence was affirmed on May 20, 1993. Dr. Hill did not seek discretionary review in the Pennsylvania Supreme Court.

On June 16, 1995, Petitioner filed a *pro se* petition pursuant to the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§9541, *et seq.*,[2] and, on February 23, 1998, PCRA counsel filed an amended petition alleging ineffective assistance of trial counsel. After oral argument, the PCRA court dismissed Dr. Hill's petition. *See Commonwealth v. Hill*, April Term, 1991, No. 3889-3998, slip op. at [2] (C.C.P. Philadelphia County, August 26, 1998).

Dr. Hill appealed, again claiming trial counsel ineffectiveness. Pennsylvania's Superior Court affirmed. *See Commonwealth v. Hill*, No. 2031 Philadelphia 1998, Judgment Order (Superior Court, May 14, 1999).

On June 11, 1999, Petitioner sought allowance of appeal in the Supreme Court of Pennsylvania. His sole issue was: "[d]id the Superior Court err in Affirming the Lower Court's Decision to dismiss Petitioner's PCRA Petition without a hearing?". *Commonwealth v. Hill*, 368 ED Alloc. Dkt. 1999, Petition for Allowance of Appeal at 3 (Supreme Court, June 11, 1999). On November 3, 1999, that court declined review. *See Commonwealth v. Hill*, 560 Pa. 740, 747 A.2d 365 (1999) (table).

On August 7, 2008, Petitioner signed and dated the instant habeas petition, and, incredibly, it was filed in this Court on April 27, 2009.[3] Dr. Hill raises the following claims:

---

[2]This was prior to the date on which the one-year jurisdictional time-bar to filing PCRA petitions became effective.

[3]Though it stretches the concept of credibility, for the purposes of the Report and Recommendation, under the prison mailbox rule, I will accept the earlier date, August 7, 2008, as the date of filing. *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998).

5

> A. Ground one: I meet A.L.I. 1962 Model Penal Code used in all Federal Courts. See p. 10 & 13 from Commonwealth. Same as A.L.I. Rule.
>
> B. Ground two: Jury Panel was illegal. Jur[or] 2 read a Newspaper Article in Judge chambers about case.
>
> C. Ground three: Inadmissible evidence. Newspaper clip in Jurors Room. Said guns as target practice but for planning a murder. Not so.
>
> D. Ground four: Prosecutorial misconduct, Mental Health Verdict (v.s.) Where to House a Mental Health Verdict Inmate.

Petition for Writ of habeas Corpus[4] at 9. The Commonwealth asserts that Dr. Hill's petition is time-barred and, therefore, not subject to review in this forum. *See* Response to Petition for Writ of Habeas Corpus[5] at 9-11.

## II. DISCUSSION

### A. AEDPA's Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA or the Act), signed into law on April 24, 1996, significantly amended the laws governing habeas corpus petitions. One of the amended provisions, 28 U.S.C. §2244(d), imposes a one-year statute of limitations on state prisoners who seek federal habeas relief. A habeas petition must be filed within one year from the date on which the petitioner's judgment of conviction becomes final by the conclusion of direct review or the expiration of the time seeking such review. *See* 28 U.S.C. §2244(d)(1).[6]

---

[4]Hereinafter "Petition".

[5]Hereinafter "Response".

[6]While the date on which the petitioner's conviction becomes final is typically the start date for the limitations period, the statute permits the limitations period to run from four different points in time, depending on which occurs the latest. In addition to the date on which the petitioner's conviction becomes final, the start date can also run from: (1) "the date on which the impediment to filing an application created by state action in violation of the Constitution or

The Courts have interpreted the AEDPA's statute of limitations to allow a "grace period" for prisoners whose convictions became final before the AEDPA came into effect. Prisoners whose convictions became final before April 24, 1996, were allowed one year from that date to file their habeas petitions. *See Burns v. Morton*, 134 F.3d 109, 111-12 (3d Cir. 1998). Motions filed on or before April 23, 1997, would not be dismissed for failure to comply with the §2244(d)(1) limitations period, regardless of when the petitioner's conviction became final.

In the instant case, Dr. Hill's state conviction became final on June 19, 1993, when the time for seeking *allocatur* in the Supreme Court of Pennsylvania expired. *See* Pa.R.App.P. 1113(a) (petition for allowance of appeal shall be filed within thirty days from the entry of the order of the Superior Court sought to be reviewed); *see also Harris v. Vaughn*, 129 Fed.Appx. 684, 685 (3d Cir. 2005) (where petitioner did not file an *allocatur* petition in the Pennsylvania Supreme Court, his judgment of conviction became final thirty days after the Superior Court affirmed his convictions) and *Lopez v. Rozum*, 2005 WL 1322515 at *3 (E.D.Pa., June 1, 2005) (petitioner's judgment of conviction became final when the time for seeking allowance of appeal in the Supreme Court of Pennsylvania on direct appeal expired). Because Dr. Hill's conviction became final before the effective date of the AEDPA, the grace period applies. Accordingly, absent any tolling, Dr. Hill had until April 23, 1997, to file his federal habeas petition.

---

laws of the United States is removed, if the applicant was prevented from filing by such state action;" (2) "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;" or (3) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence". 28 U.S.C. §2244(d)(1)(A)-(D).

Dr. Hill does not allege, and there is nothing in the pleadings before this court to suggest, that the start date for the limitations period should be permitted to run from a date other than the date on which Petitioner's conviction became final.

7

## B. Statutory Tolling

The amended habeas statute does include a tolling provision for "the time during which a properly filed application for State post conviction or other collateral review with respect to the pertinent judgment or claim is pending". 28 U.S.C. §2244(d)(2).

Due to the "grace period", Dr. Hill's one-year limitations period would have started to run on April 24, 1996. However, Dr. Hill had properly filed his state PCRA petition on June 16, 1995, before the limitations period commenced. The statute of limitations was tolled during the entire time that his PCRA petition was pending, from June 16, 1995, through November 3, 1999, when the Pennsylvania Supreme Court denied *allocatur* review. *See LaCava v. Kyler*, 398 F.3d 271, 274 (3d Cir. 2005) (the time during which a state prisoner may file *certiorari* petition in the United States Supreme Court from the denial of state post-conviction petition does not toll statute of limitations).

On November 4, 1999, Petitioner's federal habeas statute of limitations began to run. With the entire one-year period remaining, Dr. Hill had until on or before November 3, 2000, to file his habeas petition. The instant petition was not filed until August 7, 2008, over seven years too late. Because it was filed after the expiration of the one-year statutory period, Petitioner does not meet the requirements for statutory tolling under 28 U.S.C. §2244(d)(2).

## C. Equitable Tolling

The Third Circuit has ruled that Section 2244's one-year statute of limitations is subject to equitable tolling. *See Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998). However,

> equitable tolling is proper only when the "principles of equity would make [the] rigid application [of a limitation period] unfair". Generally, this will occur when the petition has "in some

8

> extraordinary way . . . been prevented from asserting his or her rights". Moreover, to be entitled to equitable tolling, "[t]he petitioner must show that he or she "exercised reasonable diligence in investigating and bringing [the] claim". Mere excusable neglect is not sufficient.

*Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003), *cert. denied*, 123 S.Ct. 2617 (2003) (internal citations omitted).

The Third Circuit explained that "equitable tolling may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999) (citations omitted). Other instances in which equitable tolling may be appropriate include "where a motion for appointment of counsel is pending or where the court has misled the plaintiff into believing that [he] had done everything required of [him]." *Id.*

It is the petitioner's burden to show that he or she "exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient." *Miller*, 145 F.3d at 618-19 (3d Cir. 1998). In the final analysis, a statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice. *See Jones*, 195 F.3d at 159 (3d Cir. 1999).

Dr. Hill has not argued, and the record before me does not suggest, that the circumstances of this case present the "rare situation" which demands equitable tolling of the federal habeas statute. Instead, Dr. Hill filed his petition many years too late; neither the "grace period", statutory tolling, nor equitable tolling save Petitioner from the time-bar. Dr. Hill's untimely habeas petition is not subject to federal review.

## RECOMMENDATION

For the reasons stated above, it is recommended that the Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. §2254, be DISMISSED AS UNTIMELY. It is further recommended a finding be made that there is no probable cause to issue a certificate of appealability.

Petitioner may file objections to this Report and Recommendation. *See* Local Rule of Civil Procedure 72.1. Failure to file timely objections may constitute a waiver of any appellate right.

BY THE COURT:

M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

Date: MAY 17 2010
By Fax and/or Mail: See the Attached List

10

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEAN-CLAUDE P. HILL [CF-7187] | : | CIVIL ACTON |
| v. | : | |
| DAVID DiGUGLIELMO, et al. | : | NO. 09-1804 |

## ORDER

AND NOW, this          day of                   , 2010, upon consideration of the pleadings and the record herein, and after review of the Report and Recommendation of M. Faith Angell, United States Magistrate Judge, it is hereby **ORDERED** that:

1. The Report and Recommendation is **APPROVED AND ADOPTED.**

2. The Petition for Writ of Habeas Corpus is **DENIED AND DISMISSED AS TIME-BARRED** under 28 U.S.C. §2244(d)(1).

There is no probable cause to issue a certificate of appealability.

BY THE COURT:

_____
STEWART DALZELL, J.